IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK D. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-1023-DWD |
| | ) |
| SARAH BROWN-FOILES, | ) |
| ROB JEFFREYS, | ) |
| HEATHER WRIGHT, and | ) |
| DANIEL Q. SULLIVAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Mark D. Smith is a civil detainee housed at Big Muddy Correctional Center ("Big Muddy") as a result of a civil commitment proceeding pursuant to the Illinois Sexually Dangerous Persons Act, 725 ILCS 205/0.01 et seq. ("SDPA"). Under the SDPA, "[p]ersons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed." *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2008); *see also Hughes v. Dimas*, 837 F.3d 807, 808 (7th Cir. 2016).

Plaintiff brought his Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants[1] violated his rights to receive treatment as a sexually dangerous person

---

[1] Plaintiff's claims are against the Defendants in their official capacities. Since the filing of his Complaint, the names of these officials have changed. Accordingly, the Court DIRECTS the Clerk

("SDP"). This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 51). Plaintiff has filed a response in opposition to the motion (Doc. 55). For the reasons set forth below, the Motion is **GRANTED**.

## Background

Following initial screening under 28 U.S.C. §1915A, Plaintiff proceeded on the following counts:

> Count 1: All defendants violated Plaintiff's right to receive treatment as a civilly committed SDP;
>
> Count 2: All defendants violated Plaintiff's right to receive treatment for his mental illnesses and disorders under the Eighth and Fourteenth Amendments;
>
> Count 3: Defendants Brown-Foiles, Jeffreys, and Sullivan violated Plaintiff's rights under the Eighth and Fourteenth Amendments by failing to adequately train or supervise their employees regarding the proper care and treatment for an SDP; and
>
> Count 4: All defendants have violated Plaintiff's liberty interests under the Fourteenth Amendment by subjecting him to a severely punitive environment.

(Doc. 10, p. 4). The claims against the Defendants are in their official capacity and Smith seeks both declaratory and injunctive relief (*Id*. at p. 3).

## Material Facts

### The SDP Program

---

to SUBSTITUTE Rob Jeffreys in place of John Baldwin, Sarah Brown-Foiles in place of C. Thomas Holt, and Heather Wright in place of Jessica D. Stover.

Defendant Wright is a Sex Offender Therapist I at Big Muddy and Plaintiff's current primary therapist (Doc. 51-1, pp. 1 and 5).  As such, she is familiar with Plaintiff's treatment at Big Muddy and is also familiar with the general treatment program at the facility.  All SDPs at Big Muddy are given an opportunity to participate in SDP treatment groups.  (*Id*. at p. 2).  They can choose whether or not to participate in the program and can sign in and out of treatment groups at any time.  (*Id*.). When an SDP chooses to participate, they are assigned one core therapy group and the facilitator of that group is considered the SDP's primary therapist.  (*Id*.).  In the SDP Program ("SDPP") there are currently eleven core therapy groups and seven elective groups.  Prior to November 2019, core groups met for one hour each week but as of November 2019 the groups meet for two hours each week.  Elective groups meet for one hour each week. (*Id*.).  There are no more than ten SDPs in a core treatment group.  (*Id*.).

Goals of the core treatment groups include developing insight into/resolving motivational and development issues, processing interpersonal relationship dynamics, identifying and learning to control deviant arousal and fantasies, and identifying and learning to challenge offending lifestyle behaviors (Doc. 51-1, pp. 3-4).  The SDPP also offers sexual offense specific groups when deemed clinically appropriate.  (*Id*. at p. 4). Those groups teach specific topics and strategies related to the sexual offending treatment process and encourages participants to practice those behaviors in their core treatment group. (*Id*.). Sexual offense specific groups include cycle of sexual offending and relapse prevention.  (*Id*.).  The SDPP also offers four categories of didactic groups, which are offered on a rotating basis and teach specific topics and strategies related to the treatment

process. (*Id*. at p. 4). Those groups include anger management, social skills, rational emotive behavioral therapy, and substance abuse. (*Id*.).

SDPs participating in treatment can request to be placed in either sexual offense specific or didactic groups (Doc. 51-1, p. 4). If an SDP requests placement in a group, the treatment staff determine whether the group is clinically appropriate for the SDP. (*Id*.). In addition to requesting to be placed in a group, treatment staff may also place an SDP in either group when it is deemed clinically appropriate. (*Id*.).

SDPs also have access to non-sex offense specific activities. They have access to mental health treatment, medical treatment, correctional counselors, library services, recreation, and religious services. (Doc. 51-1, p. 4). Big Muddy staff attempt to keep SDPs separate from the general population. As of November 2019, SDPs reside in Housing Unit 1 on B and C wings. (*Id*. at p. 3).[2] Only SDPs are housed in these wings. Although general population offenders are housed on A and D wings of the same housing unit, the doors to each wing are secured and correctional staff observe each wing. (*Id*.). SDPs do attend some services with general population inmates, but security staff are present and make efforts to keep the SDPs separate. (*Id*. at p. 5). SDPs are allowed to leave their cells and access the dayroom on their wing during treatment hours which are from 8:30 to 2:30, Monday through Friday. They also have dayroom access during the evening and weekend hours. (*Id*.).

---

[2] Defendants' brief mentions both Housing Units 4 and 1 interchangeably. It appears SDPs were housed in one housing unit prior to November 2019 and another housing unit after November 2019. Regardless of the housing unit, SDPs are housed on the B and C wings and separated from the general population.

SDPs are required to follow Illinois Department of Correction ("IDOC") rules and regulations that apply to all individuals housed at Big Muddy, as well as SDPP-specific rules. (Doc. 51-1, p. 3). SDPP staff monitor the behavior of the individuals in the treatment program and they exercise their authority based on the established rules of both IDOC and the SDPP. (*Id*.). SDPs can receive disciplinary reports and be subject to institutional discipline if they violate institutional rules. (*Id*.). The consequences for those violations are set forth in the IDOC protocols. Once the infraction is recorded, the SDPP staff are not involved in the disciplinary process. (*Id*.). If an SDP violates a SDPP rule, he receives notification of the infraction but does not receive any discipline (*Id*.). The policies and rules are designed to facilitate optimal treatment and provide for care and safety of the participants. (*Id*.). Any infractions are recorded for non-compliance, but do not result in any loss of privileges or property. (*Id*.).

## Plaintiff's Experience

On October 9, 2013, Plaintiff was civilly committed as an SDP (Doc. 51-2, p. 15). He has been housed at Big Muddy since December 20, 2013 (*Id*. at p. 17). Plaintiff participates in one of Wright's core treatment groups, as well as three didactic groups: anger management, rational emotive behavioral therapy, and substance abuse. (Doc. 51-1, p. 5). He receives five hours of treatment each week. (*Id*.). According to Wright, the treatment Plaintiff receives is "designed to effectuate his recovery and eventual release from the SDPP[.]" (*Id*.). Plaintiff is eligible for treatment and has access to programs so long as he participates in treatment. (*Id*.). Plaintiff testified that the treatment he receives

in Wright's core group is helping him and is designed to help his recovery (Doc. 51-2, pp. 24-26).

Plaintiff's Complaint alleges that he was placed in segregation as discipline, and that he was made to wear a jumpsuit that singled him out. (Doc. 1). In his deposition, Plaintiff testified that he was placed in segregation on at least five occasions for flashing his therapist. (Doc. 51-2, pp. 34-36, 47-48, 59, 70-71, 76). He also received a charge for sexual misconduct for writing in his homework assignment about sexual thoughts and feelings related to the same therapist. (Id. at pp. 36-39). Plaintiff received a hearing on the incidents before the Adjustment Committee. (Id. at p. 35).

After his release from segregation, Plaintiff was placed in intensive therapy where he could only come out of his cell for group and homework. (Doc. 51-2, pp. 44-45). In intensive therapy he was provided with a jumpsuit that was sewn from the bottom up in order to prevent him from flashing his therapist. (Id. at pp. 72-73, 84-89).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### Count 1

As civil detainees, SDPs constitutional protections regarding the conditions of their confinement arise from the Due Process Clause of the Fourteenth Amendment. *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Due process requires that their conditions and the duration of their confinement "bear some reasonable relation to the purpose for which persons are committed." *Allison*, 332 F.3d at 1079. Although committed individuals are entitled to "more considerate treatment and conditions of confinement" than traditional prisoners, the state is entitled to exercise professional judgment as to the needs of the confined individuals. *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-2 (1982)). See also *Lane v. Williams*, 689 F.3d 879, 882 (7th Cir. 2012) ("[T]he constitutional requirement is that professional judgment be exercised."). Confined individuals are entitled to "some treatment" and "what that treatment entails must be decided by mental-health professionals." *Id*. at 1081; *Lane*, 689 F.3d at 882. Treatment decisions made with professional judgment are presumptively valid unless the decision is such a "substantial departure from accepted professional judgment, practice or standards" that the decision is found not to be based on professional judgment. *Lane*, 689 F.3d at 882 (quoting *Youngberg*, 457 U.S. at 323).

In his Complaint, Plaintiff alleged that he received less than one hour per week of treatment, less than forty hours of treatment total in four and half years, and was never provided treatment designed to help his recovery (Doc. 10, p. 3). Here, however, Plaintiff does not deny that he is receiving more extensive treatment at Big Muddy. He participates in a core treatment group as well as three didactic groups. He receives approximately five hours of treatment each week. He also had access to treatment and homework assignments while housed in segregation (Doc. 51-2, pp. 37-38, 40). Plaintiff's primary therapist testified that based on her knowledge, practice, and experience working with sex offenders, the treatment that Plaintiff is receiving is designed to effectuate his recovery and eventual release (Doc. 51-1, p. 5).

Plaintiff fails to point to any aspect of the SDPP that departs from professionally accepted standards or is somehow insufficient, such that a reasonable finder of fact could find the program would be unconstitutional.[3] He testified that both his current core therapy group with Wright and his didactic groups are beneficial and designed to effectuate his treatment. (Doc. 51-2, pp. 22-26). In his deposition, Plaintiff asserts that the program itself was ineffective because he believes it lacks a format and guidance on homework assignments. (*Id*. at pp. 99-102). However, he offers no evidence beyond his own lay opinion from which a jury could find that the program is not based on professional judgment. He is clearly receiving care that was deemed necessary under the

---

[3] Plaintiff's response (Doc. 55) does not focus on the merits of his claims, but instead focuses on his ability to exhaust his administrative remedies. He fails to address any of the arguments raised in Defendants' motion.

professional judgment of Wright and the other staff. Because Plaintiff fails to identify any part of the program that departs from professional judgment, the Defendants are entitled to summary judgment on Count 1.

### Count Two

A pretrial detainee's claim for improper medical treatment is also considered under the Due Process Clause of the Fourteenth Amendment. A standard of objective reasonableness (rather than deliberate indifference under the Eighth Amendment) governs medical claims under the Fourteenth Amendment's Due Process Clause. *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018)).[4]

The controlling standard has two steps. The first step focuses on the intentionality of the defendant's conduct and "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *Id*. (quoting *Miranda*, 900 F.3d at 353). Negligence – even gross negligence — is not enough. *Id.* (citing *Miranda*, 900 F.3d at 353). See also *Darnell v. Pineiro*, 849 F.3d 17, 35–36 (2d Cir. 2017) (concluding that "[a]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence")). The second step looks at whether the challenged conduct was objectively reasonable. *See Miranda*, 900 F.3d at 354. Looking at all of the facts and circumstances

---

[4] There is currently some question as to whether the standard also includes a requirement of an objectively serious medical condition, in common with the Eighth Amendment standard. Here, Defendants do not challenge the seriousness of Plaintiff's condition.

before the defendant, a court must determine whether the response was reasonable, without taking into account "any subjective belief held by the individual." *McCann*, 909 F.3d at 886.

Again, Plaintiff does not deny that he receives treatment at Big Muddy. He participates in several groups designed to address his sex offense specific mental health. He also has access to non-sex offense specific mental health treatment as well as medical treatment. (Doc. 51-1, p. 4). He testified that he meets with a mental health professional once a month and was prescribed an anti-depressant. (Doc. 51-2, pp. 28-29). While in segregation, he also had access to a mental health professional once a week (*Id.* at pp. 64-65, 98). Plaintiff fails to identify any denial of mental health treatment or any way in which mental health treatment that he received does not meet the objective reasonableness standard. He testified that he wanted an immediate fix for his mental health issues, but now realizes that it is a gradual process. (Doc. 51-2, pp. 29-30). He acknowledged that the treatment and medications helped his mental illness. (*Id.*). Because Plaintiff fails to offer evidence that he was denied adequate mental health treatment, Defendants are entitled to summary judgment on Count 2.

## Count Three

Plaintiff also alleges that Defendants Jeffreys, Sullivan, and Brown-Foiles (or their predecessors, as this is an official capacity claim) failed to train or supervise employees regarding the proper care and treatment of SDPs. (Doc. 10, p. 3). There is no *respondeat superior* liability under Section 1983. A supervisor can only be held liable if they are personally involved, if they knew about the conduct and approved it, condoned it, or

turned a blind eye. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Lanigan v. Vill of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997)). Further, a failure to train may give rise to liability where the inadequacy of the training amounts to deliberate indifference to the rights of persons who come into contact with the inadequately trained personnel. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (in the context of municipal liability).

Plaintiff fails to offer any evidence that any of the defendants were aware of improper care and treatment at Big Muddy or that they condoned or turned a blind eye to that care. Nor has Plaintiff produced any evidence that personnel at Big Muddy were inadequately trained. Thus, Defendants are also entitled to summary judgment on Count 3.

## Count Four

Plaintiff's alleges that he has been subjected to a severely punitive environment (Doc. 10, p. 5). A pretrial detainee states a conditions-of-confinement claim under the Fourteenth Amendment if he was subjected to conditions that were "objectively unreasonable" and "excessive in relation to any legitimate non-punitive purpose." *Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019).[5] Like a pretrial detainee, an SDP can be punished for conduct while in custody, but the "punishment can be imposed only after affording the [committed person] some sort of procedural protection." *Rapier v.*

---

[5] The concurrence in *Hardeman* suggests that the same requirement that "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" used in detainee use-of-force and medical treatment claims should be extended to conditions-of-confinement claims. 933 F.3d at 827.

*Harris*, 172 F.3d 999, 1005 (7th Cir. 1999). A civil detainee may be put in isolation, as "preserving the safety of the staff and other detainees takes precedence over medical goals." *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003).

Plaintiff argues in his response that he has been placed in segregation for extensive periods of time, as recently as 2020, and he believes that the segregation is being used as a punitive measure. (Doc. 55, p. 4). But a committed individual like Plaintiff may be placed in segregation so long as he receives notice of the charges against him and an opportunity to be heard. *West*, 33 F. 3d at 748; *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). Plaintiff testified that he was placed in segregation on at least five occasions for flashing his therapist and for a charge of sexual misconduct for writing in his homework assignment about sexual thoughts and feelings related to the same therapist. He acknowledged that he went before the Adjustment Committee for a hearing on the incidents. Wright also testified that SDPs receive disciplinary reports and those reports are processed in accordance with IDOC protocols which require notice and a hearing. 20 Ill. Admin. Code 504.80. Plaintiff fails to offer any evidence that he was denied due process prior to being placed in segregation. Similarly, there is no indication that his time in segregation was excessive in relation to the legitimate non-punitive purpose of deterring him from sexually assaulting his therapist.

Plaintiff also takes issue with the fact that he was issued a jumpsuit after his release from segregation. While in intensive therapy he was provided with a jumpsuit that was sewn from the bottom up in order to prevent him from flashing his therapist, which made him he feel singled-out because he was the only one wearing a jumpsuit. (*Id.* at pp. 72

and 90). Wright testified that wearing the jumpsuit was an intervention tool designed to address Plaintiff's repeated flashing incidents, and that such actions are common in the SDPP. (Doc. 51-1, pp. 5-6). Once the SDPP staff determined that Plaintiff would follow the rules, he was no longer required to wear the jumpsuit. Again, Plaintiff presents no evidence from which a reasonable finder of fact could conclude that this was excessive in relation to the legitimate non-punitive purpose of the action. As such, Defendants are entitled to summary judgment on Count 4.

## Disposition

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment (Doc. 51). Plaintiff's claims are **DISMISSED** with prejudice. The Court **DIRECTS** the Clerk of Court to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: November 24, 2020

DAVID W. DUGAN
**United States District Judge**